# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 14-CV-5202 (JFB) (AKT)

———————————

STEPHEN TESTA,

Plaintiff,

VERSUS

CAREFUSION,

Defendant.

———————————

**MEMORANDUM AND ORDER**
August 2, 2016

———————————

JOSEPH F. BIANCO, District Judge:

Stephen Testa ("plaintiff"), proceeding *pro se*, filed this action against Carefusion ("defendant") alleging that defendant violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34 and New York Labor Law ("Labor Law") §§ 191(1)(c) and 191(3). Specifically, plaintiff alleges that defendant violated the ADEA by firing him in December 2013 and that defendant violated the Labor Law by failing to pay him his commission and provide him with a statement of earnings.[1]

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that plaintiff has failed to state a claim upon which relief could be granted for violation of either the ADEA or the Labor Law.

As discussed below, defendant's motion to dismiss is denied in part and granted in part. Plaintiff has plausibly pled claims for violation of the ADEA and Labor Law § 191(3), but has failed to sufficiently allege a claim for violation of § 191(1)(c) of the Labor Law. However, plaintiff shall be permitted to replead his claim to allege violation of § 191(1)(c).

## I.    BACKGROUND

### A.    Factual Background

The following facts are drawn from the Amended Complaint and are construed in favor of plaintiff.

---

[1] Plaintiff's amended complaint and opposition complain about defendant's alleged failure to comply with certain discovery obligations. These arguments should be raised with the Magistrate Judge and will not be addressed here.

Plaintiff alleges that he worked for a predecessor of Carefusion[2] as a Regional Sales Manager between 2006 and 2009. (Pl.'s Am. Compl.[3] ("Am. Compl.") at 1[4].) In 2009, however, his position was eliminated. (*Id.*) He left Carefusion but found work at another medical device company six months later. (*Id.*) In January 2013, he was contacted by a Carefusion employee, Matt Stuckert ("Stuckert"), who inquired whether plaintiff would be interested in returning to a Regional Sales Manager position at Carefusion. (*Id.*) After an interview by Stuckert and two other Carefusion employees, plaintiff was offered the Sales Manager role in February 2013. (*Id.*)

Plaintiff alleges that defendant underwent a number of changes in the summer of 2013. (*Id.*) Despite this upheaval, he claims that he nevertheless was able to maintain his individual performance sales rankings "somewhere in the middle." (*Id.*) He avers that Stuckert reviewed his performance in August 2013 and stated that plaintiff had "done a good job of gaining control over . . . business opportunities of the district[,] . . . re-establishing [customer] relationships [,] . . . and manag[ing] his team through difficult customer situations." (*Id.* at 2.)

The corporate restructuring also led to changes in his role. (*See id.*) In particular, he contends that in or around August 2013, the "Regional Sales Manager position became a position of analytics and confusing formula analysis." (*Id.*) Plaintiff admits that this new role was "completely different from [his]

experience, skills, and job description" and that it necessitated "analytical skills" that he did not have at the time. (*Id.*)

He alleges that in the fall of 2013, he had several conversations with Stuckert "regarding the skills necessary to perform analytics" and that "[his] age came into question as to matching up with the skill set of someone younger, who had the analytical training of a younger employee." (*Id.*) He claims that he asked for help and additional training to develop the requisite skillset. (*Id.*) However, he asserts that, in November 2013, after he asked for assistance, he was told: "[w]ell, the job has changed and unfortunately someone from your era might not have these skills"; "things are different today"; "the job you did here [three] years ago has changed"; and "the skills needed are typically of a younger sales manager." (*Id.*)

Plaintiff states that he was contacted on or around December 11, 2013 by Stuckert and a second employee, Ron Vavala ("Vavala"), to whom Stuckert reported. (*Id.* at 3.) Vavala asked plaintiff to resign, and Stuckert asked plaintiff to consider reassignment to two different positions within the Company. (*Id.*) Two days later, plaintiff was terminated. He was fifty-three years old when terminated. (*Id.* at 4.) He alleges that he was replaced by Tina Vogt, who was thirteen years his junior. (*Id.*)

Plaintiff alleges that he has "an exemplary record of professionalism, superior achievements, and [he] ha[s] always

---

[2] Plaintiff states that Carefusion is a spin-off of the predecessor organization. (Am. Compl. at 1.)

[3] Defendant argues that plaintiff's Amended Complaint should be dismissed as "confused, ambiguous, vague, and unintelligible." Although the Court agrees that the Amended Complaint is not a model of clarity, it is nevertheless sufficient to put defendant on notice of the claims against it, and

therefore does not mandate the extreme penalty of dismissal. *See, e.g.*, *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 346 (S.D.N.Y. 2014) (refusing to dismiss complaint that, though partially incomprehensible, still put the defendants on notice of the plaintiff's claims).

[4] The Amended Complaint does not contain numbered paragraphs, so the Court will refer to page numbers.

been a valued and honest employee," but that Carefusion terminated him because it wanted a younger employee. (*Id.*)

Plaintiff also alleges that he was not provided his final commission payment and that he never received certain wage statements to which he alleges he was entitled by law. (*Id.* at 3.)

### B.    Procedural Background

Plaintiff filed his Amended Complaint on August 10, 2015. (ECF No. 31.) On October 9, 2015, defendant moved to dismiss. (ECF No. 34.) Plaintiff avers that he timely delivered his Opposition to defendant's Motion to Dismiss to the Court to comply with his November 9, 2015 deadline; however, it was not filed on ECF at that time. He did, however, mail a copy to defendant, which Carefusion acknowledges it received on November 10, 2015.[5] (*See* ECF No. 37 at 1.) Defendant filed its Reply on November 23. (ECF No. 36.) On December 1, 2015, plaintiff wrote to the Court, stating that he had served his Opposition in a "timely fashion," and had "personally c[o]me to the Federal Court to deliver the documentation," but that he was "unaware [he] needed to leave a copy for [his] file at the Court." (ECF No. 41.) He enclosed a copy of his Opposition with his December 1 letter. (*Id.*) The Court will, therefore, consider the matter fully briefed and has considered all of the parties' submissions.

### II.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations

set forth in the Amended Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 556 U.S. 662 (2009). The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for

---

[5] Defendant contends that the Court should disregard plaintiff's Opposition because it was not timely filed. However, given that defendant received a copy of the Opposition the day after it was due, it has not

demonstrated that it was prejudiced by plaintiff's error, and therefore, the Court, in its discretion, shall consider plaintiff's submission.

more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

The Court notes that, in adjudicating this motion, it is entitled to consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McClusky v. New York State Unified Court Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

III.     DISCUSSION

A.     Age Discrimination Claim

With respect to pleadings in discrimination cases, the Supreme Court, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), rejected the concept that there is a heightened pleading standard and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Swierkiewicz*, 534 U.S. at 510 ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). Thus, the controlling standard for survival of a motion to dismiss lies not in *McDonnell Douglas*, but in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513 (complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

To establish a prima facie case under the ADEA, a plaintiff must demonstrate "membership in the protected age group, qualifications for the job[] at issue, an adverse employment action, and that the adverse action occurred under circumstances giving rise to an inference of discrimination." *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)). "Under the ADEA, a plaintiff must allege that age was the 'but for' cause—not merely a motivating factor—of the adverse employment action." *Barone v. S&N Auerbach Mgmt., Inc.*, No. 15-109, 2016 WL 1237871, at *1 (2d Cir. Mar. 30, 2016) (summary opinion). Defendant does not dispute that plaintiff is a member of the protected group or that he suffered an adverse employment action. However, defendant asserts that plaintiff has not properly alleged that he was qualified for the position or that his termination occurred under circumstances that give rise to an inference of discrimination.

1.     Qualified for the Position

First, defendant argues that plaintiff's Amended Complaint must be dismissed

4

because he failed to plausibly allege that "he was satisfactorily performing his duties of his job position."[6] (Def.'s Mot. to Dismiss ("Mot.") at 7.) However, at the motion to dismiss stage, the Court must accept as true plaintiff's allegation that he was qualified for the position. *See, e.g.*, *Consoli v. St. Mary Home/Mercy Cmty. Health*, No. 3:13CV1791 JBA, 2014 WL 3849978, at *5 (D. Conn. Aug. 5, 2014) (explaining that at the motion to dismiss stage, the court was required to accept as true the plaintiff's allegation that she adequately performed her job and therefore would not dismiss her ADEA claim despite the defendant's argument that the plaintiff was fired, not because of her age, but because she negligently cared for a patient); *see also Peterec-Tolino v. Commercial Elec. Contractors, Inc.*, No. 08 CIV. 0891RMBKNF, 2009 WL 2591527, at *6 (S.D.N.Y. Aug. 19, 2009) (*pro se* plaintiff's assertion that "he was able to do his job" was sufficient to plausibly state a claim for age discrimination under the ADEA). To the extent that defendant disagrees with plaintiff's assessment of his performance, it is a disputed issue of fact not properly resolved at this time.

2. Inference of Discrimination

Defendant also alleges that plaintiff was not terminated under circumstances giving rise to an inference of age discrimination. Plaintiff disagrees and, as evidence of defendant's alleged ageism, notes that after he was terminated, Carefusion replaced him with Ms. Vogt, who is thirteen years younger than plaintiff. (Am. Compl. at 4.) The replacement of a plaintiff by a significantly younger employee may support an inference of discrimination. *See, e.g.*, *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d

301, 311 (S.D.N.Y. 2015) ("[A]n inference of age discrimination may be raised where a plaintiff 'alleges that [he or] she was within the protected class, that [he or] she was rejected for a position, and that the position was filled by a person significantly younger than [him or] her.'" (quoting *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013))); *Sandvik v. Sears Holding/Sears Home Improvement Prods., Inc.*, No. 12-CV-2096 JFB GRB, 2014 WL 44225, at *15 (E.D.N.Y. Jan. 2, 2014) (replacement by younger employee supports inference of discrimination); *Del Valle v. City of New York*, No. 11 CIV. 8148 DLC, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013) (observing that "where the plaintiff challenges his removal from his position, the fact that he is replaced by someone who is significantly younger may raise an inference of age discrimination"); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 507 (S.D.N.Y. 2010) (holding that a twelve-year age difference between the plaintiff and the replacement is sufficiently substantial to establish an inference of discrimination).

As further support for his claim of ageism, plaintiff points to several comments that he believes demonstrate Carefusion's discriminatory intent. Verbal comments may constitute evidence of discrimination. *See, e.g.*, *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004) ("Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff."). However, such comments must be distinguished from mere stray remarks because stray remarks, even if made by a

---

[6] The Court notes that, to the extent this argument touches on the issue of whether plaintiff's termination was justified based on his allegedly poor performance,

it is more properly raised as a defense after plaintiff has made out a prima facie case, which plaintiff is not required to do at the motion to dismiss stage.

decisionmaker, do not constitute sufficient evidence of employment discrimination. *See Baffa v. STAT Health Immediate Med. Care, P.C.*, No. 11-CV-4709 JFB GRB, 2013 WL 5234231, at *12 (E.D.N.Y. Sept. 17, 2013) (citing *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)). To determine whether a comment is a stray remark or may be probative of discrimination, courts consider "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010). Further, the Second Circuit has also observed that "[a]lthough evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may "bear a more ominous significance" when considered within the totality of all the evidence. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *Danzer*, 151 F.3d at 56 (internal quotation marks omitted)).

Plaintiff asserts that the following four comments, made in response to his request for additional training, reveal defendant's ageism: (1) "well, the job has changed and unfortunately, someone from your era might not have these skills"; (2) "things are different today"; (3) "the job you did here three years ago has changed"; and (4) "the skills needed today are typically of a younger sales manager." (Am. Compl. at 2.) Considering these statements in light of the factors delineated above and in the light most favorable to plaintiff, it is certainly plausible

that these comments were not stray remarks, and may support an inference of age discrimination. As to the first factor, the comments seem to have been made by Stuckert,[7] who appears to have been plaintiff's supervisor, was responsible for reviewing his performance, and was involved in plaintiff's termination. Regarding the timing of the comments, plaintiff avers that they were made in November 2013, just a month before his termination. With respect to the content of the remarks, the first, second, and fourth comments could be construed (again, drawing all reasonable inferences in plaintiff's favor) to contain a discriminatory undertone in that they cast plaintiff or members of "his era" in a less favorable professional light than younger employees. Finally, it appears that the comments were made in the context of the decision-making process, as they were made while discussing plaintiff's job performance and the skills necessary for him to satisfactorily perform in his role.

In short, these statements could support a plausible claim that plaintiff was terminated under circumstances giving rise to an inference of discrimination, given that they allegedly reflect age bias espoused by plaintiff's supervisor and were expressed only a month before plaintiff was terminated during a discussion regarding his job performance. *See, e.g., Roginsky v. Cty. of Suffolk, N.Y.*, 729 F. Supp. 2d 561, 569 (E.D.N.Y. 2010) (holding that the plaintiff had sufficiently stated a claim under the ADEA based on, *inter alia*, allegations concerning supervisor's comments that the plaintiff "was getting 'old' and that the plaintiff "was not going to be around much longer"); *Schreiber*, 324 F. Supp. 2d at 522 (decision-maker's comments that he did not want "older people" in his trading group

---

[7] It is not clear from the Amended Complaint who made these comments; however, drawing all reasonable inferences in plaintiff's favor, the Court may reasonably infer that the speaker was Stuckert.

made three months before plaintiff's termination and "in the context of a complaint by [the plaintiff] that he could not get into his preferred trading group" "reflected a discriminatory atmosphere and, consequently, constituted evidence of discrimination"); *Koestner v. Derby Cellular Products*, 518 F. Supp. 2d 397, 402 (D. Conn. 2007) (concluding that remark that the defendant company "needed to get younger" was probative of age discrimination because it was made by a decision-maker, three months before the plaintiff's termination, "expressed a desire to take action relating to the age of [the defendant's] employees," and was made during a manager's meeting); *compare Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (the plaintiff failed to allege a connection between supervisor's comments that he was tired of working with menopausal women and the plaintiff's termination where comments were made three months and one year prior to termination and the plaintiff failed to allege comments were part of any decision-making process).

The Court acknowledges that the inference of discrimination is weakened by the fact that plaintiff was hired when he was a member of the protected class and the fact that Stuckert both hired and fired plaintiff. *See Gray v. Lutheran Soc. Servs. of Metro. New York, Inc.*, No. 04CV2843(JFB)(JMA), 2006 WL 1982859, at *8 n.8 (E.D.N.Y. July 13, 2006) (noting that inference of discrimination is undermined by the fact that the plaintiff was hired by the allegedly ageist supervisor). Nevertheless, the Court concludes that plaintiff's replacement by a significantly younger employee, coupled with Stuckert's alleged comments, are sufficient to make out a claim for age discrimination under the ADEA that survives a motion to dismiss. *See, e.g.*, *Sandvik*, 2014 WL 24225, at *15 (ageist comments and

replacement of the plaintiff by younger employees supported an inference of age discrimination); *Kittrell v. Dep't of Citywide Admin. Servs. Div. of Pers.*, No. 10-CV-2606 NGG RLM, 2013 WL 2395198, at *10 (E.D.N.Y. May 31, 2013) (holding that the plaintiff's allegations concerning her replacement by a significantly younger employee and comments made about her retirement were sufficient to support a prima facie case of age-related discriminatory discharge), *aff'd*, 561 F. App'x 30 (2d Cir. 2014); *Hird-Moorhouse v. Belgian Mission to United Nations*, No. 03 CIV. 9688, 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010) (concluding that the plaintiff's replacement by a younger employee, coupled with supervisor's comments that the plaintiff was "too old for her job" and that he wanted to promote a "younger image," were sufficient to give rise to an inference of discrimination); *compare Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) (the plaintiff failed to state a claim under the ADEA where she alleged only that she was replaced by younger employees, but failed to identify the age or identity of her replacement or point to any other evidence of discrimination, for instance, a discriminatory comment), *aff'd*, 594 F. App'x 53 (2d Cir. 2015); *Maysonet v. Citi Grp., Inc.*, No. 10 CIV. 4616 SAS, 2011 WL 476610, at *5 (S.D.N.Y. Feb. 9, 2011) (dismissing age discrimination claim because the plaintiff failed to "allege that [the defendant] specifically replaced her with someone significantly younger or that her supervisors made any disparaging remarks about her age"); *Barker v. UBS AG*, No. 3:09-CV-2084 CFD, 2011 WL 283993, at *6 (D. Conn. Jan. 26, 2011) (noting that "[d]iscriminatory intent may be derived from a variety of circumstances including employer criticisms of the plaintiff's performance using degrading, age-related terms," but concluding that the plaintiff had

failed to state a claim for violation of the ADEA because there was "no allegation that she was replaced by a younger worker or that anyone ever made any comments or references to her age").

B. New York Labor Law Claim

With respect to plaintiff's Labor Law claim, he asserts:

> [m]y final pay of commission was never provided to me . . . . This is a violation of New York State labor laws, violating labor law act 191 C. New York State law requires that [c]ommissioned [s]alespersons to (sic) be given a written agreement regarding payment of their commission. Upon my termination, I was not provided any statements, and was not paid any commissions which were due.

(Am. Compl. at 3.)

Plaintiff seems to argue that defendant violated Labor Law § 191 in two respects: (1) by failing to provide commissions allegedly owed to him at the time of his termination; and (2) by failing to provide a statement of earnings.

1. Commission

Section 191(3) provides that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." N.Y. Lab. Law § 191(3). Wages include "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." § 190(1). Plaintiffs "sufficiently plead[] a violation of NYLL § 191(3) by alleging they 'were not paid the wages owed them upon the termination of their employment.'" *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14 CV 1857 RJD LB, 2015 WL 5437492, at *5 (E.D.N.Y. Aug. 27, 2015) (quoting *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *4 (E.D.N.Y. Jan. 28, 2009)), *report and recommendation adopted*, No. 14-CV-1857 RJD LB, 2015 WL 5444939 (E.D.N.Y. Sept. 15, 2015). Plaintiff's Amended Complaint pleads just that: he avers that he was owed commission payments from October, November, and December 2013, but that he was not paid upon his termination. Thus, the Court will not dismiss his claim under section 191(3). *See Thompson*, 2015 WL 5437492, at *5 (holding that the plaintiff had sufficiently pled a violation of section 191(3) for unpaid compensation where he alleged that he was owed $400 in wages for his last week of work, but was not paid); *Shim*, 2009 WL 211367, at *4 (the plaintiffs sufficiently pled violations of section 191(3) by alleging that "they were not paid the wages owed them upon the termination of their employment"); *Zentz v. Int'l Foreign Exch. Concepts, L.P.*, 939 N.Y.S.2d 745 (Sup. Ct. 2011) (the plaintiff sufficiently pled a claim for violation of section 191(3) by asserting that a bonus was promised, but not paid), *aff'd*, 965 N.Y.S.2d 180 (App. Div. 2013); *see also Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 404 (E.D.N.Y. 2015) (the plaintiff sufficiently alleged violation of section 191's provisions concerning timing of wage payments by alleging that the plaintiff "reported for work at specified times during the week of September 10" and "was not timely paid for the services she performed during that period"); *Belizaire v. RAV*

*Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353-54 (S.D.N.Y. 2014) (the plaintiff stated a claim for violation of section 191's provisions concerning the timeliness of wage payments by averring that he "never received [his] payroll check in a timely manner, or in the correct amount").

### 2.    Statement of Earnings

Section 191(1)(c) of the Labor Law provides that for "[c]ommission salespersons," the employer "shall furnish a commission salesperson, *upon written request*, a statement of earnings paid or due and unpaid." N.Y. Lab. Law § 191(1)(c) (emphasis added).    By its terms, this provision does not require the employer to provide such a statement unless requested to do so by the commission salesperson. *See id.* Plaintiff has not alleged that he made such a request to defendant, and therefore has failed to show that defendant contravened the requirements of section 191(1)(c), without which he cannot establish any entitlement to relief. *See, e.g.*, *Slotnick v. RBL Agency Ltd.*, 706 N.Y.S.2d 431 (2000) (dismissing cause of action where the plaintiff failed to sufficiently allege non-compliance with statute).

However, in light of plaintiff's *pro se* status, the Court has considered whether plaintiff should be afforded an opportunity to replead this claim. "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 259, 278 (E.D.N.Y. 2005); *see also Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff]

an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999).

Plaintiff is granted leave to file a Second Amended Complaint in accordance with this Order, if plaintiff wishes, to attempt to replead this claim. Plaintiff is cautioned that the Second Amended Complaint completely replaces the Amended Complaint and therefore must include factual allegations and any claims plaintiff seeks to pursue against defendant. The Second Amended Complaint must be clearly labeled "Second Amended Complaint," bear the same docket number as this Order, 14-5202 (JFB)(AKT), and shall be filed within thirty (30) days from the date of this Order.

IV.     CONCLUSION

For the reasons set forth above, the motion to dismiss the Amended Complaint is denied with respect to plaintiff's claims for violation of the ADEA and section 191(3) of the Labor Law.  The motion is granted with respect to plaintiff's claim regarding defendant's alleged violation of section 191(1)(c) of the Labor Law; however, plaintiff is granted leave to replead this claim. If plaintiff wishes to file an amended complaint, the Second Amended Complaint must be filed within thirty (30) days of this Memorandum and Order.


SO ORDERED.



_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 2, 2016
        Central Islip, NY

                    * * *

Plaintiff proceeds *pro se*.  Defendant is represented by Seth Diamant Kaufman and Brian Jeffrey Gershengorn, Ogletree, Deakins, Nash, Smoak & Stewart P.C., 1745 Broadway, 22nd Floor, New York, NY 10019.