UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────

№ 14-CV-05202 (JFB) (AKT)
───────────────

Stephen Testa,

Plaintiff,

versus

CareFusion,

Defendant.

───────────────

**MEMORANDUM AND ORDER**
April 3, 2018
───────────────

Joseph F. Bianco, District Judge:

Stephen Testa ("Testa" or "plaintiff"), proceeding *pro se*, brings this action against CareFusion ("CareFusion" or "defendant") for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34 and New York Labor Law ("Labor Law") § 191(3). Presently before the Court are (1) defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and (2) defendant's motion to preclude evidence submitted in opposition to summary judgment which plaintiff failed to produce in discovery. For the reasons set forth below, the Court grants defendant's motion for summary judgment with respect to ADEA claim, and declines to exercise supplemental jurisdiction over the New York Labor Law claim. Because the Court grants defendant's motion for summary judgment as to the federal claim and declines to exercise supplemental jurisdiction over the state law claim, defendant's motion to preclude evidence is denied as moot.

I. Background

A. Facts

The Court takes the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts

1

in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[1]

1. Plaintiff's Hiring as Regional Sales Manager of Carefusion's Northeast Region

From 2006 to 2009, plaintiff worked as a Regional Sales Manager at Cardinal Health, a predecessor company of CareFusion. (Def.'s 56.1 ¶ 10.)[2] In or about November 2009, plaintiff was laid off from his position at Cardinal Health. (*Id.* ¶ 13.) In January 2013, while employed by Teleflex, a medical device company, Matthew Stuckert ("Stuckert"), Area Vice President of Sales at CareFusion, reached out to plaintiff regarding an available position as a Regional Sales Manager at CareFusion. (*Id.* ¶¶ 14, 17.) Plaintiff interviewed with Stuckert, his direct manager, Scott Boucher ("Boucher"), and Boucher's manager, James Paloyan. (*Id.* ¶ 19.) During his interview, plaintiff was informed that the position would be similar to his prior position with Cardinal Health: plaintiff would oversee a team of sales representatives selling vascular and surgical products. (*Id.* ¶ 20.) Plaintiff accepted an offer of employment as Regional Sales Manager-Surgical/Vascular and commenced employment on or about February 11, 2013. (*Id.* ¶¶ 24, 26.) Plaintiff was fifty-two years of age at the time he was hired, and his base salary was $120,000. (*Id.* ¶¶ 25-26.) Throughout his employment at CareFusion, plaintiff reported directly to Stuckert. (*Id.* ¶ 26.) According to plaintiff's deposition testimony, he believed that Stuckert was in his early forties. (*See* Aranyos Declaration ("Aranyos Decl.") Ex. C, Deposition of Stephen Testa ("Testa Dep.") at 255.)

2. Plaintiff's Job Performance and Termination

The articulated basis for plaintiff's termination was his alleged poor job performance over the course of his time at CareFusion. The following evidence is contained in the record concerning plaintiff's performance.

In July 2013, CareFusion's surgical and vascular sales teams were restructured into two separate groups. (Def.'s 56.1 ¶ 37.) Plaintiff assumed the responsibilities of Vascular Sales, Northeast Region. His duties and responsibilities comported with his job expectations, but now he was only responsible for vascular sales. (*Id.* ¶¶ 39-41; Testa Dep. at 112.) Plaintiff claims that his job became more analytical after the restructuring, and he concedes that he was not good at that part of the job. (Testa Dep. at 126-28, 231-32.) The restructuring affected every sales employee in Surgical and Vascular at CareFusion, not just Testa. (Def.'s 56.1 ¶ 38.) As a result of the restructuring, Stuckert's supervisor became Ronald Vavala ("Vavala"). (*Id.*) Vavala was forty-nine years of age. (*Id.* ¶ 86.)

As Regional Sales Manager, plaintiff had primary responsibility for a sales team to develop and execute a sales strategy and to reach or exceed target sales goals. (*Id.* ¶ 42.) To that end, plaintiff needed to monitor each sales representative to ensure that he or she was meeting quota and that each sales

---

[1] In addition, where the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record.

[2] CareFusion is a global medical technology corporation that manufactures and sells a variety of healthcare products and medical devices. (Def.'s 56.1 ¶ 1.)

2

representative's issues were addressed efficiently through regularly scheduled sales calls. (*Id.*) Plaintiff was required to provide Stuckert, his supervisor, with notes from sales calls with his representatives.[3] (*Id.* ¶ 61.) His position also required that he review and update CareFusion's sales tracking system and ensure that his team provided complete updates, and that he go into the field to assist sales representatives with client issues.[4] (*Id.* ¶ 43.) Plaintiff was also responsible for contract renewals and contract compliance as it related to Premier contracts.[5] (*Id.* ¶ 54.) This involved reviewing contracts for compliance, proactively contacting customers, advising customers of their deficiencies, and resolving issues. (*Id.* ¶ 57.)

On or about August 26, 2013, Stuckert provided plaintiff with a written and verbal performance evaluation. (*Id.* ¶¶ 58, 63.) Though plaintiff received a score of "3-On Target" on a scale from 1 through 5, he was counseled by Stuckert for his failure to keep him apprised of the status of his territory. (*Id.* ¶¶ 58-59.) Stuckert also expressed his concern about how plaintiff was using and managing his time. (*Id.* ¶ 64.) Plaintiff failed to provide Stuckert with notes from sales calls with his sales representatives, as he admittedly failed to hold regular sales calls with his team. (*Id.* ¶¶ 61, 64.) To assist plaintiff in meeting his job expectations, Stuckert instructed plaintiff to utilize Outlook for calendaring his sales calls. (*Id.* ¶ 65.)

At plaintiff's deposition, he asserted that in August 2013, around the time of his evaluation, Stuckert stated, "you know, the job is changing" and "a person from your era wouldn't have the type of analytical skills that we require." (Testa Dep. at 251-52.) Plaintiff testified that he understood this comment to relate to his lack of computer-based skills. (*Id.* at 253.) He admitted that he knew he was not good at that part of his job, and had expressed to Stuckert that he wanted to become better at his job and that he was willing to learn. (*Id.* at 231-32, 252.) Although plaintiff alleges that no training was offered for the analytical part of his job (*id.* at 232-33), defendant maintains that it offered online training modules and held conferences with training programs, including one that required plaintiff's attendance in September 2013 (Def's. 56.1 ¶ 48). In that same conversation with plaintiff, Stuckert allegedly stated, "things are different today," "the skills needed today are typically of a younger sales manager." (Testa Dep. at 261.) Plaintiff testified that he believed Stuckert was referring to how the job had changed since plaintiff had previously worked for CareFusion's predecessor—that is, how the job had become more analytical. (*Id.*) Defendant denies that Stuckert made these statements.[6] (Def.'s Reply Mem. at 6).

---

[3] As Area Vice President, Stuckert was responsible for overseeing and managing his regional sales managers, including plaintiff. (*Id.* ¶ 60.) Stuckert relied on frequent and complete updates from his regional sales managers to ensure that sales targets were on track and that contractual or personnel issues were promptly resolved. (*Id.*)

[4] CareFusion utilized Salesforce.com ("SFDC"), a software system to manage its business processes and to track sales and customer issues. (*Id.* ¶ 44.)

[5] Premier is a group purchasing organization created to help hospitals and other providers pool purchasing power to secure discounts on medical supplies. (*Id.* ¶ 55.)

[6] Plaintiff's Amended Complaint and Opposition state that the alleged comments were made in early November 2013 (Am. Compl. at 2; Pl.'s Mem. at 9); however, at his deposition, plaintiff testified that these comments were made in August 2013 (Testa Dep. at 250-52, 261).

3

Despite Stuckert's efforts, plaintiff's performance failed to improve. Stuckert received calls from members of plaintiff's sales team inquiring about plaintiff's whereabouts and informing him that plaintiff continuously failed to hold regular sales calls. (Def.'s 56.1 ¶¶ 70-71.) In October 2013, CareFusion's Human Resources Director, Danielle Strazzo ("Strazzo"), held a conference call with plaintiff's sales team to evaluate the effectiveness of plaintiff's managerial skills. (*Id.* ¶ 72.) The team indicated that plaintiff needed to be more involved, hold more consistent team calls, and schedule more field visits. (*Id.* ¶ 74.) On October 11, 2013, Strazzo provided plaintiff with a summary of his team's feedback and instructed him to email, to his team, his commitments as their leader. (*Id.* ¶ 76.)[7] After Strazzo reminded plaintiff to contact his team on October 18, 2013, plaintiff reached out to his team members via email on October 21. (*Id.* ¶¶ 77-78.) In his email, plaintiff agreed to be more involved in the field, have more team calls and communications, meet with team members in person, and help the team become more proficient in utilizing SFDC to track and monitor sales. (*Id.* ¶ 80.)

On or about October 28, 2013, Stuckert contacted Employee Relations to express concerns about plaintiff's job performance and seek advice. (*Id.* ¶ 81.) As a result, Stuckert prepared a Performance Improvement Memorandum ("PIM") for plaintiff, outlining deficiencies in his performance and Stuckert's expectations going forward.[8] (*Id.* ¶¶ 81-84.) The PIM was reviewed by Human Resources and Vavala prior to its submission to plaintiff on November 8, 2013. (*Id.* ¶¶ 85-86.) The PIM addressed Stuckert's specific concerns about plaintiff, including: his failure to hold regularly scheduled team conference calls, his failure to effectively use Outlook as a primary scheduling tool, his failure to update the software system completely and accurately, his failure to schedule regular sales calls, and his failure to engage in key CareFusion priorities, including renewing any of his thirty-eight Premier contracts. (*Id.* ¶¶ 88-89 90-91, 94.) The PIM also required that plaintiff spend three days a week in the field with sales representatives and customers, complete his thirty-eight Premier targets by January 1, 2014, schedule regular team and sales calls in Outlook, copy Stuckert on all notes from team calls he conducted, and submit weekly advisory reports. (*Id.* ¶ 97.) The PIM also stated that "[f]ailure to meet these expectations could lead to more serious action steps up to and including termination." (*Id.* ¶ 97.) At the time he received the PIM, plaintiff acknowledged his deficiencies and conceded that he did not have the analytical skills needed. (*Id.* ¶ 98.)[9]

Plaintiff acknowledges that Stuckert continuously followed up with him each week following the issuance of the PIM. (*Id.* ¶¶ 99-100.) However, plaintiff admittedly continued to struggle and his performance deteriorated as he provided late and incomplete sales updates, missed deadlines, and failed to spend time in the field with his sales representatives or provide weekly reports to Stuckert. (*Id.* ¶¶ 101-04.) Stuckert also failed to renew any Premier contracts.

---

[7] Stuckert was also provided a copy of Strazzo's summary. (*Id.* ¶ 75.)

[8] The purpose of the PIM was (i) to identify any employee performance issues and the impact on the company; (ii) to document previous performance discussions and coaching; (iii) to set expectations for moving forward; (iv) to provide focused guidance on how to improve performance; and (v) to communicate potential consequences of the employee's failure to improve. (*Id.* ¶ 83.)

[9] Plaintiff refused to sign the PIM. (Pl.'s 56.1 ¶ 88.)

4

(*Id.* ¶ 104.) Because of plaintiff's deficiencies, Stuckert was required to spend time completing plaintiff's assignments and assigning work to other team members. (*Id.* ¶ 105.) In December 2013, both Vavala and Stuckert spoke with plaintiff about his continued poor performance, failure to move forward on any Premier contracts, and his inability to successfully complete the PIM by January. (*Id.* ¶ 106.) As a result of his failures, on December 13, 2013, ten months after hiring plaintiff, Stuckert, with Vavala's approval, terminated plaintiff's employment. (*Id.* ¶ 108.) At the time of plaintiff's termination, he was fifty-three years old. (Am. Compl. at 1.) A member of plaintiff's sales team, Tina Vogt ("Vogt"), replaced plaintiff as Regional Sales Manager on or about January 6, 2014. (Def.'s 56.1 ¶ 110.) Vogt was forty-one years of age when she was promoted, and was provided a salary of $105,597.95. (*Id.* ¶ 110; Pl.'s Mem. at 24.) Plaintiff testified that he believes CareFusion terminated his employment not only because of his age but, in part, to save money, as he was hired from outside the company and his salary was "in the upper part of what people were making for that position." (Testa Dep. at 255-57.) CareFusion paid plaintiff his final wages and commission payment on December 20, 2013 (Def.'s 56.1 ¶ 112), though plaintiff alleges that he is still owed commission payments (Am. Compl. at 3).

B. Procedural Background

Plaintiff filed his Amended Complaint on August 10, 2015. Defendant moved to dismiss for failure to state a claim on October 9, 2015. On August 2, 2016, this Court denied in part and granted in part defendant's motion to dismiss plaintiff's Amended Complaint. Specifically, this Court found that plaintiff had plausibly pled claims for violations of the ADEA and Labor Law § 191(3), but failed to sufficiently allege a claim for violation of Labor Law § 191(1)(c). Plaintiff was permitted to replead the § 191(1)(c) claim, but did not do so.

On October 2, 2017, defendant moved for summary judgment on the remaining claims. Plaintiff opposed the motion on October 31, 2017, and defendant replied on November 16, 2017.

On December 5, 2017, defendant filed a motion to preclude new evidence submitted by plaintiff in support of his opposition to summary judgment that was not produced during discovery. Plaintiff opposed the motion on December 5, 2017, and defendant replied on December 27, 2017.

The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

To prevail on summary judgment, the moving party must "show[] that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, the Court must "assess the record in the light favorable to the non-movant and . . . draw all reasonable inferences in [his] favor." *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990).

Once the moving party has met this initial burden, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Put differently, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

5

The Second Circuit has also made clear that summary judgment is still available "even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (noting that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation"). Additionally, the Court recognizes that direct evidence of discrimination is rare and plaintiffs must often resort to circumstantial evidence to establish an employer's hidden motives. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001). However, "the mere incantation of intent or state of mind [cannot] operate as a talisman to defeat an otherwise valid motion." *Meiri*, 759 F.2d at 998.

Finally, because plaintiff proceeds *pro se*, the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, plaintiff is not excused from "the usual requirements of summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002). Thus, "conclusory statements, conjecture, or speculation . . . will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

III. DISCUSSION

Defendant moves for summary judgment on the following grounds: (1) plaintiff cannot establish a prima facie case of age discrimination, and in any event, defendant had a legitimate, non-discriminatory reason for terminating plaintiff's employment which plaintiff cannot establish was a pretext; and (2) plaintiff cannot establish a wage claim under Labor Law § 191(3).

A. Age Discrimination under the ADEA

1. Legal Standard

The ADEA states that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The overriding issue in an age discrimination case is whether the plaintiff has met her burden of proving that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that under the ADEA a plaintiff cannot establish disparate treatment by proving that age was simply a motivating factor in the adverse decision). In the absence of direct evidence of discrimination, claims for employment discrimination based on age are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (holding that the Supreme Court's decision in *Gross* did not disturb "the [*McDonnell Douglas*] burden-shifting framework for ADEA cases that has been consistently employed in [the Second] Circuit").

First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) he is a member of a protected class (2) who performed his job satisfactorily, (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp.*, 411 U.S. at 802 & n.13 (noting that elements of prima facie case vary depending on factual circumstances); *Stratton v. Dep't*

*for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a prima facie case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43 (2000). The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), *abrogated on other grounds by Reeves*, 530 U.S. at 148).

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted, and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that "a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" for the adverse action. *Gorzynski*, 596 F.3d at 107.

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue—that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

Defendant argues that plaintiff cannot establish a prima facie case of age discrimination in connection with his termination because, based upon his own admissions, and as evidenced in plaintiff's performance evaluations, he was not performing in his position satisfactorily. (Def.'s Mem. at 12-21.) Defendant thus argues that plaintiff was not terminated under circumstances giving rise to an inference of discrimination. (*Id.*)[10] As set forth below, defendant has demonstrated that it is entitled

---

[10] Defendant additionally argues that plaintiff failed to complain of the alleged discrimination under CareFusion's anti-discrimination policy and reporting procedure, and thus, his claim is barred by the *Faragher/Ellerth* defense. (Def.'s Mem. at 21-22.) In light of the Court's conclusion that defendant had a

7

to summary judgment as to plaintiff's ADEA claim because no reasonable jury could find age discrimination even construing the facts most favorably to plaintiff.

For the purpose of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a prima facie case of age discrimination. In response, defendant has established a legitimate, non-discriminatory reason for his dismissal, namely, plaintiff's failure to perform his job adequately during his time at CareFusion. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find age discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 432 (2d Cir. 1999). Thus, the Court first evaluates the plaintiff's evidence, then the defendant's evidence, and, finally, the evidence as a whole.

a. Plaintiff's Evidence of Age Discrimination

Plaintiff submits the following as evidence of defendant's discrimination based on his age:

First, plaintiff was fifty-three years of age when he was fired. Second, plaintiff was replaced by a forty-one-year-old individual who made significantly less money than him. Third, plaintiff alleges that his supervisor commented about his inability to perform the analytical part of his job in relation to plaintiff being from a different "era" and how "things are different today." (Testa Dep. at 251-52, 261.) Finally, plaintiff argues that the reason defendant gives for his termination, namely, his poor job performance, is a mere pretext for age discrimination—that he performed his job satisfactorily and requested help and training that was not provided.

b. Defendant's Evidence of Non-Discriminatory Animus

Defendant submits the following undisputed facts as evidence of non-discriminatory animus:

First, there is uncontroverted evidence that plaintiff was having trouble performing his job for the entire ten-month period he worked at CareFusion prior to his termination. The record reflects that plaintiff's job performance was suffering and that plaintiff acknowledged that he wanted to do better. Second, the alleged statement made by Stuckert to plaintiff was a stray remark made four months before his termination. Third, CareFusion affirmatively sought plaintiff out, and hired him at the age of fifty-two, when he was already a member of the protected class. Fourth, both Stuckert and Vavala, the decision-makers with regard to plaintiff's termination, were in their forties, and thus members of the same protected class as plaintiff. Finally, plaintiff's replacement was forty-one years of age, and therefore in the same protected class as plaintiff.

c. Evidence as a Whole

Considering the evidence as a whole, the Court concludes that no reasonable jury could find that plaintiff was fired based on his age. Indeed, the undisputed evidence indicates that plaintiff had performance issues for the entirety of his employment at CareFusion. Further, defendant advised

---

legitimate, non-discriminatory reason for plaintiff's termination, it is not necessary to reach this issue.

8

plaintiff of these performance issues through its formal review process, and again following a conference call with plaintiff's sales team members, and, finally, through the issuance of a PIM. (*Id.* 115-21, 156-74, 194-212.) There is also uncontroverted evidence that, even after the issuance of the PIM, plaintiff continued to mismanage his sales team and territory and failed to meet the objectives set forth therein. (*Id.* at 224-27.) Plaintiff even admitted that he struggled with the requirements of his position and was not performing satisfactorily. (*Id.* at 231-32, 237 ("Q. Isn't it fair to say also that you didn't like the analytical parts of the job? A. Not—not necessarily that I didn't like it, I could have been better at it. Q. Well, you knew that you weren't good at it; right? A. True. Q. You were struggling in certain respects in your position at that time; right? A. I'll answer the question yes.").) He also failed to renew any of the thirty-eight Premier accounts for which he was responsible and, despite PIM requirements, continuously failed to spend time in the field with his sales representatives or provide weekly reports to his supervisor. (*Id.* at 216-27; Def.'s 56.1 ¶¶ 100-05.) Thus, based upon the uncontroverted evidence, a rational jury could draw only one conclusion: plaintiff was terminated due to his poor performance; not his age.

Plaintiff contends that he has "superior management skills for the medical device field." (Pl.'s Mem. at 5.) However, plaintiff merely points to his own subjective belief that he was good at his job, and a single witness statement made by a former CareFusion sales representative about his performance. (*Id.* at 21-24.) An employee's subjective disagreement with his manager's evaluation of his performance is not a viable basis for a discrimination claim. *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999). Such beliefs cannot preclude summary judgement for "'it is the perception of the decision-maker, and not that of plaintiff, which is relevant.' Simply because plaintiff's perceptions of his own qualifications differ from those of his employer does not entitle us to 'delve into the question of which portrayal is the correct one because this Court does not sit as super-personnel department that reexamines an entity's business decisions.'" *Rosen v. Columbia Univ.*, No. 92 Civ. 6330, 1995 WL 464991, at *7 (S.D.N.Y. Aug. 7, 1995) (citations omitted); *see also Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (holding assertion of personal beliefs insufficient to show pretext), *cert. denied*, 520 U.S. 1228 (1997); *Feldman v. Looms, a Div. of Levcor Int'l, Inc.*, No. 98-9680, 198 F.3d 233 (table), 1999 WL 973518, at *2 (2d Cir. 1999) (affirming summary judgment where employer "clearly articulated a legitimate, nondiscriminatory reason for termination, namely that [employee's] performance was unsatisfactory, and has supported this contention with ample evidence in the record"). The undisputed evidence supports defendant's claims that plaintiff's performance was lacking. Plaintiff's failure to provide requested updates to his supervisor, his lack of progress on Premier accounts, and complaints from his sales team constitute legitimate, non-discriminatory reasons for the issuance of the PIM and CareFusion's ultimate decision to terminate.

Similarly, plaintiff's contention that he was not provided with training despite his request is not evidence of age discrimination. The uncontroverted evidence reflects that plaintiff was required to attend SFDC refresher training at a company meeting in September 2013, and that CareFusion offered its employees other online training opportunities. (Def.'s 56.1 ¶ 48.) In any event, plaintiff's purported explanation for his poor performance does not provide evidence of age discrimination. *Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409,

431 (E.D.N.Y. 2012) (finding no evidence of age discrimination where plaintiff argued she was fired due to inadequate training and an increased workload); *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer.'" (quoting *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983))). Moreover, to the extent that plaintiff argues that his performance could have improved with more training, an employer is not obligated to provide such training. *See, e.g.*, *Siano*, 40 F. Supp. 2d at 524, *aff'd*, 201 F.3d 432 (2d Cir. 1999) ("While employers are required under the ADEA to treat employees in a neutral fashion, they are not required to spend more time and effort training an employee over forty than they would spend training anyone else.").

The only evidence upon which plaintiff relies are alleged stray remarks made by Stuckert to plaintiff during a discussion about his poor job performance in August 2013. Plaintiff alleges that, in discussing the difficulties plaintiff was having with the analytical part of his job, Stuckert stated, "you know, the job is changing" and "a person from your era wouldn't have the type of analytical skills that we require." (Testa Dep. at 251-52.) Plaintiff further avers that Stuckert told him, "[T]hings are different today," and "the skills needed today are typically of a younger sales manager." (*Id.* at 261.) Though Stuckert denies making these statements, (Def.'s Mem. at 19), even if he had, stray remarks made months before plaintiff's termination are insufficient to demonstrate a discriminatory intent. *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) (citing *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence [to support] a case of employment discrimination."); *see also Argueta v. N. Shore Long Isl. Jewish Health Sys., Inc.*, No. 01 CV 4031, 2003 WL 22670915, at *8 (E.D.N.Y. Nov. 6, 2003) (same). Instead, the Court must evaluate discriminatory comments in light of all of the evidence presented of discriminatory motive. *Howe v. Town of Hempstead*, No. 04 Civ. 0656, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006) ("[Discriminatory] comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action.") (citing *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004)). "[O]ne stray comment by itself is usually not sufficient proof to show age discrimination . . . ." *Carlton*, 202 F.3d at 136 (quoting *Danzer*, 151 F.3d at 56). At the time the remarks were allegedly made in August 2013, plaintiff admits that he was discussing the difficulties he was having performing the analytics portion of his job. (Testa Dep. at 249-62.) In light of the context and the entire record, no rational jury could infer a causal connection between the comment and plaintiff's December 2013 termination.

Moreover, any possible inference of discrimination is further weakened by the fact that plaintiff was fifty-two years of age at the time of his hiring, and therefore "well within the protected class when [he was] first hired." *O'Connor v. Viacom Inc.*, No. 93 Civ. 2399, 1996 WL 194299, at *7 (S.D.N.Y. Apr. 23, 1996); *Nance v. City of New York*, 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) (finding that, even if replacement of plaintiff with a younger worker supported an inference of age discrimination, that inference was significantly undermined by the fact that plaintiff was already over forty when she was initially hired).

In addition, "[w]hen the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" *Carlton*, 202 F. 3d at 137 (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). Moreover, "[c]ase law teaches that where the termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision." *Id.* (citing *Grady*, 130 F.3d at 561); *see also Emanuel v. Oliver, Wyman & Co.*, 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) ("[N]o reasonable juror could conclude that [defendant] fired [plaintiff] because he was a mere eleven months older than when he was hired."); *Coleman v. Prudential Relocation*, 975 F. Supp. 234, 241 (W.D.N.Y. 1997) (no age discrimination where plaintiff was hired at age fifty-one and discharged fourteen months later). Thus, the fact that Stuckert hired plaintiff in February 2013, at the age of fifty-two, and then fired him ten months later, further repudiates any inference of discrimination.

In opposing summary judgment, plaintiff avers that his "termination was completely based on age discrimination and the fact [that he] was a more highly salaried, and older employee." (Pl.'s Mem. at 5.) Plaintiff asserts that he was fifty-three years of age when he was fired and that defendant "wanted a younger employee in [his] position" to whom it could pay less money. (Am. Compl. at 4; Pl.'s Mem. at 5.) Plaintiff argues that the fact that his immediate replacement, Vogt, was younger than him supports an inference of discriminatory intent to defeat defendant's motion. (Pl.'s Mem. at 6.) As an initial matter, plaintiff must come forward with more than just his age to prove discrimination. *E.g.*, *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993). Further, Vogt, who was forty-one at the time of her promotion to Regional Sales Manager, was within plaintiff's protected class. (Pl.'s Mem. at 5.) "Where no other evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a prima facie case of discrimination." *Johnson v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 314, 323 (E.D.N.Y. 2014), *aff'd*, 633 F. App'x 42 (2016) (alterations omitted); *see also White v. Pacifica Found.*, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013) ("The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent.").

Furthermore, while an employer's knowledge of a "significant" age discrepancy between the discharged employee and his replacement "is necessary to support an inference of discriminatory intent at the prima facie stage," *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78 & n.6 (2d Cir. 2005), it does not, by itself, create an issue of fact as to defendant's alleged discriminatory intent. Thus, even assuming *arguendo* that the twelve-year age difference between Vogt and plaintiff was "significant," no reasonable jury could find, under the circumstances of this case, that such evidence, by itself, establishes that plaintiff was fired because of his age. *See Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir.1999) ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."); *Waldorf v. Liberty Maint., Inc.*, No. 05 Civ. 2557, 2007 WL 942103, at *8 (S.D.N.Y. Mar. 29, 2007); *McFadden v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 04 Civ. 9629, 2006 WL 2930200, at *6 (S.D.N.Y. Oct. 11, 2006) (granting summary judgment where, although plaintiff established prima facie case in part by demonstrating that she was replaced by a

significantly younger employee, plaintiff had "failed to show either that [defendant's proffered] reasons [we]re illegitimate or that they were pretexts"); *O'Sullivan v. N.Y. Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) ("[A]llegations of replacement by younger workers do not, without more, prove discrimination."); *see also Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir. 1994) ("Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination.").

Finally, although not dispositive, the fact that Stuckert and Vavala—the decision makers with regard to plaintiff's firing—were both over forty years old and thus members of the same protected class as plaintiff weakens any inference that the decision to fire plaintiff was based on his age.[11] *See, e.g.*, *Zuffante v. Elderplan, Inc.*, No. 02 Civ. 3250, 2004 WL 744858, at *6 (S.D.N.Y. Mar. 31, 2004) (noting invidious discrimination especially unlikely when, *inter alia*, the decision-maker is in the same protected class as plaintiff); *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 210 (S.D.N.Y. 2000) (finding plaintiff's evidence of age discrimination "thin" when, in part, the decision-makers were also in the protected age category); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (finding "a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class"); *Pisana v. Merrill Lynch & Co.*, No. 93 Civ. 4541, 1995 WL 438715, at *4 (S.D.N.Y. July 20, 1995) ("The fact that . . . decision makers were close to [plaintiff's] age, or older, weakens any suggestion of age discrimination." (citing *Williams*, 819 F. Supp. at 225)); *Earvin v. City Univ. of N.Y.*, No. 03 CV 9521, 2008 WL 5740359, at *6 (S.D.N.Y. Jan. 17, 2008) ("[T]he decisionmakers' status as protected class members enhances the inference that there was no discriminatory motive.").

In sum, although the Court recognizes that an "extra measure of caution is merited in affirming summary judgment in a discrimination action," *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006), plaintiff has put forth no evidence, other than his age and stray remarks made four months prior to his termination, to support his claim. These facts are countered by the undisputed evidence weighing against plaintiff's allegations—specifically: plaintiff's job performance was unfavorable for the entirety of his employment; plaintiff was hired when he was fifty-two years old by the same individual that fired him ten months later; his replacement, at age forty-one, was also a member of the protected class; and, finally, those individuals responsible for terminating plainitff's employment were also members of the protected class. Thus, in light of the overwhelming uncontroverted evidence weighing against an inference of discriminatory intent, no reasonable jury could find that plaintiff was fired because of his age. Indeed, the only reasonable conclusion is that plaintiff was fired based on his poor job performance. Accordingly, summary judgment dismissing plaintiff's wholly unsupported age discrimination claim under the ADEA is granted.[12]

---

[11] Plaintiff testified that he believed Stuckert was over forty years of age. (Testa Dep. at 255.) Vavala was forty-nine years of age. (Def. 56.1 ¶ 86.)

[12] The Court notes that, in plaintiff's opposition, he asserts, for the first time, a hostile work environment at CareFusion. (Pl.'s Mem. at 8, 10.) Specifically, plaintiff argues that Vogt and another sales representative, Mike Russo, reached out to the sales team prior to the October 2013 conference call to influence what they were going to say about plaintiff. (*Id.* at 10.) Plaintiff in effect is apparently attempting

B. New York State Claim

Plaintiff also asserts a cause of action under New York State law. Having determined that the federal claim does not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "decline[s] to exercise supplemental jurisdiction" over plaintiff's state law claim because it "has dismissed all claims over which it has original jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, under 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claim given the absence of any federal claims that survive summary judgment, and dismisses plaintiff's state claim without prejudice.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary

---

to add a claim never addressed in the Amended Complaint. "Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion." *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997); *see also DeFilippo v. N.Y.S. Unified Court Sys.*, 223 F. App'x 45, 46 (2d Cir. 2007) ("[T]he District Court did not abuse its discretion in prohibiting [plaintiff] from raising a due process claim for the first time in his opposition to defendants' summary judgment motion."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'").

In any event, the Court has carefully analyzed the record and concludes that there is no evidence to support a hostile work environment claim. A hostile work environment is established when a plaintiff shows that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Plaintiff's conclusory statements in his opposition to summary judgment fail to set forth any evidence from which a rational jury could conclude that he was subject to such an environment. Thus, even if it had been properly before this Court, a claim for hostile work environment would fail.

judgment with respect to the federal claim. The Court declines to exercise supplemental jurisdiction over the state law claim, and dismisses the state law claim without prejudice. Finally, defendant's motion to preclude evidence is denied as moot. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: April 3, 2018
      Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendant is represented by Stephanie L. Aranyos of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 1745 Broadway, 22nd Floor, New York, New York 10019.